UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

William Doucette,
    Plaintiff,
v.
CIM Group, L.P. et al,
    Defendants.

2:19-cv-08539-VAP-JDEx

**Order DENYING Plaintiff's Motion to Remand (Dkt. 17).**

Before the Court is Plaintiff's Motion to Remand (the "Motion"). (Dkt. 17). Defendants filed their Opposition on November 11, 2019 (Dkt. 23), and Plaintiff replied on November 20, 2019 (Dkt. 24). The Court finds the matter suitable for decision without a hearing pursuant to Local Rule 7-15. After considering all papers filed in support of, and in opposition to, the Motion, the Court DENIES the Motion to Remand.

## I. BACKGROUND

Plaintiff is a member of the International Alliance of Theatrical Stage Employees (the "Union"). (Dkt. 17 at 7). The Union and Defendants, a collection of entities and individuals that allegedly own, manage, lease, or are otherwise affiliated with the Dolby Theatre in Los Angeles, California, are parties to a collective bargaining agreement ("CBA") governing the employment of Union members by Defendants. (Dkt. 3, 25–29). Plaintiff

1

claims, *inter alia*, that Defendants fired him in violation of the terms of the CBA. (*Id.* at 33–41).

Specifically, Plaintiff alleges that, on or about July 12, 2016, Plaintiff accepted a job with Defendants to perform between two and twelve weeks of work as a stage technician, with the possibility of follow-on work. (*Id.* at 28–30). Defendants allegedly discharged Plaintiff the morning of July 12, 2016 and, after Plaintiff re-applied for and accepted the same position, again the following morning. (*Id.* at 29). Plaintiff states he believes he was fired on the basis of age and in retaliation for having previously filed grievances against Defendants. (*Id.* at 30).

Plaintiff filed this lawsuit in California state court on October 19, 2018. (*Id.* at 6). Following several amendments to the complaint, Defendants timely removed the case to federal court on October 3, 2019. (Dkt. 1).

On October 18, 2019, this Court issued an Order to Show Cause ("OSC") why the Court should not dismiss Plaintiff's claim for breach of contract. (Dkt. 16). The Court noted the record did not reflect that Plaintiff had exhausted his remedies under the CBA prior to bringing this lawsuit, as required by Section 301(a) of the Labor Management Relations Act ("LMRA"). (*Id.* at 2). The Court granted an extension to respond to the OSC while the instant Motion was pending. (Dkt. 21).

Plaintiff argues remand is appropriate because his first claim, for breach of contract, neither arises from nor requires interpretation of the

CBA, and therefore the Court lacks subject matter jurisdiction. (Dkt. 17 at 13–17).

## II. LEGAL STANDARD

The federal removal statute, 28 U.S.C.A. § 1441, provides that any civil action brought in state court may be removed to a federal district court that would have had original jurisdiction over the same matter. A federal court must, however, remand the case if it finds there is no diversity of citizenship or the claims do not arise under federal law. 28 U.S.C.A. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see also Int'l Primate Prot. League v. Admin. of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991). Removal statutes are strictly construed against removal jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Section 301(a) of the LMRA "gives federal courts subject matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C.A. § 185. "Section 301 is on its face a jurisdictional statute, under which '[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties.'" *Cramer v. Consol. Freightways, Inc.*, 255

F.3d 683, 689 (9th Cir. 2001), as amended (Aug. 27, 2001) (quoting 29 U.S.C. § 185(a)).

The Supreme Court has long held that § 301 "preempts the use of state contract law in CBA interpretation and enforcement." *Id.* at 689 (citing *Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962)). Not all claims implicating collectively bargained agreements raise a federal question, however: § 301 preempts only "claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quotation marks and citation omitted); *see also Livadas v. Bradshaw*, 512 U.S. 107, 122–24 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."). "If the plaintiff's claim cannot be resolved without interpreting the applicable CBA . . . it is preempted. Alternatively, if the claim may be litigated without reference to the rights and duties established in a CBA . . . it is not preempted." *Cramer*, 255 F.3d at 691 (internal citations omitted).

### III.  DISCUSSION

Plaintiff contends his breach of contract claim does not derive from or substantially depend on analysis of the CBA, though he "acknowledges that on the face of the First Amended Complaint, it appears to state that the contract at issue arises out of the CBA." (Dkt. 17 at 15). He argues that

4

Union members' employment with Defendants was governed by both the CBA and an unwritten "custom and practice," the latter effectively a second agreement under which Plaintiff was entitled to retain his stage technician position. (Dkt. 17 at 15). Plaintiff submits that "the substance of the [breach of contract] claim is an extra-contractual agreement between [Defendants] and union which is not part of, or included in, the CBA," and therefore his claim invokes a question of state law independent of any federal question. (*Id.* at 15–16).

Plaintiff's argument is without merit. His claims do not merely require a court to "look to" or "consult" the CBA. *See Livadas*, 512 U.S. at 124–25. Rather, the fundamental underlying question is whether Defendants terminated Plaintiff in violation of the CBA, a question that a court cannot answer without interpreting and applying the CBA's provisions. The complaint alleges, *inter alia*, that the Union and Defendants are parties to a collective bargaining agreement (Dkt. 3 ¶¶ 4–8); that Plaintiff is a Union member hired by Defendants pursuant to the CBA (*id.* ¶ 9); that the CBA governed "hiring and termination" and "how long a job employment [was] to last (absent 'good cause')" (*id.*); that "[p]ursuant to the bargaining agreement, once accepted for employment by Defendants, . . . Plaintiff was to remain employed until the assignment ended" (*id.* ¶12); and that Defendants breached the agreement by terminating Plaintiff on July 12 and 13, 2016 (*id.* ¶ 32). At a minimum, a court would need to interpret the hiring and termination provisions of the CBA (including, for instance, the definition of "good cause") to determine whether Defendants' alleged conduct represents a breach.

The Court is unpersuaded by Plaintiff's insistence that the only agreement at issue is the "implied contract" established by the parties' practice and custom (*see* Dkt. 17 at 16). The complaint is saturated with references to violations of the CBA. (*See generally* Dkt. 3, Ex. B). More telling, the complaint distinguishes between the CBA and the parties' practice, often while alleging violations of both. (*See id.* ¶ 17 ("Plaintiff is informed and believes [Defendants] terminated Plaintiff's employment . . . in violation of the bargaining agreement and the long-term course and conduct of employment and hiring of Union members."); *id.* ¶ 21(a) ("Violating the terms of the bargaining agreement concerning the hiring and retention of Union members and violating the expectations of Plaintiff and other Union members predicated on the long-standing course and conduct . . ."); *id.* ¶ 30 ("Plaintiff is an intended third-party beneficiary of the contract between Union and Defendants . . . . Plaintiff was an intended beneficiary of the course and conduct of Defendants, and each of them, concerning the expectation that if job requested by Defendants . . . was to continue for more than one work day . . . that the Union member employed was to remain in his/her employment for the duration of the job or production . . .")). Thus, the language of the complaint belies Plaintiff's argument that he did not allege violations of the CBA.

Even assuming, *arguendo*, that the complaint alleged a breach of contract claim based only on the parties' practice and custom, § 301 preemption would still apply. "The collective agreement covers *the whole employment relationship*. It calls into being a new common law—the

common law of a particular industry or of a particular plant." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 579 (1960) (emphasis added). Thus, "[c]ollective-bargaining agreements may include implied, as well as express, terms. Furthermore, it is well established that the parties' practice, usage and custom is of significance in interpreting their agreement." *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 311–12 (1989) (quotation marks and citations omitted).

Plaintiff confuses a claim that is *independent* of the CBA with one properly governed by the CBA despite involving terms or customs not explicitly expressed therein. The latter is pre-empted. By Plaintiff's own insistence, the alleged extra-contractual agreement derives from a "custom and practice [that] has been long established, followed, and applied by both the union and The Dolby Theater." (Dkt. 17 at 8). A court would need to interpret the CBA to discern the custom's role within the "whole employment relationship," *see Warrior & Gulf*, 363 U.S. at 579, and its importance as an implied term of the CBA, *see Consol. Rail*, 491 U.S. at 311–12.

Finally, the Court notes that any element of the alleged extra-contractual not incorporated into the CBA is ineffectual. *See Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1474 (9th Cir. 1984) ("To the extent that the alleged policy manual is inconsistent with the provisions of the collection bargaining agreement, the bargaining agreement controls. . . . The alleged personnel manual could have binding effect only if it were authorized by and incorporated by reference in the collective bargaining agreement. By omitting any reference to the collective bargaining

7

agreement Olguin attempts to avoid federal jurisdiction, but his suit is effectively a suit to enforce the collective bargaining agreement, and section 301 provides Olguin's only remedies. This cause of action was therefore properly removed."); see also *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (holding that where the subject matter of an employment dispute "is a job position covered by the CBA, . . . the CBA controls and the contract claim is preempted.").

## IV. CONCLUSION

The Court therefore DENIES Plaintiff's Motion to Remand. Defendant is directed to respond to the Court's October 18, 2019 OSC by no later than **January 6, 2020**.

**IT IS SO ORDERED.**

Dated: 1/2/20

Virginia A. Phillips
Chief United States District Judge